OPINION
{¶ 1} Appellant Michelle Willett appeals the decision of the Morgan County Court of Common Pleas, Juvenile Division, which granted Appellee Jeremy Simmons' request for custody of the parties' child. The relevant facts leading to this appeal are as follows.
 {¶ 2} Appellant is the mother of Destiny Simmons, born in 2000. Appellant and appellee began dating in April 1999. After appellant gave birth, the parties remained amicable, and appellee periodically visited with or babysat Destiny. Appellant has held a number of service-sector jobs, some of them with afternoon and evening hours, necessitating further assistance from appellee and others in watching the child. Appellant lived for a time, after Destiny's birth, in a trailer with her mother and sister. Appellee lives with his grandfather, who works as a township trustee, road supervisor, and part-time minister, and his grandmother, a homemaker who, among other things, prepares the household's meals. Appellant has been diagnosed with anxiety and dysthymia, a form of depression, but has been less than consistent in her treatment for her condition. Appellee, who is twenty-four and receiving SSI disability, suffers from schizoaffective disorder, for which he takes medication. Appellee has admitted to a history of drug and alcohol use, and is not permitted medically to consume alcohol with his current medications.
 {¶ 3} In July 2001, appellant let Destiny stay with appellee and his grandparents while she went for dental work. The appointment was over sooner than expected, and a dispute arose concerning Destiny's return, culminating in the sheriff's department responding to the scene. On July 17, 2001, appellee filed a motion for custody. On September 17, 2001, the court granted a temporary order to maintain Destiny in appellee's custody. On April 4, 2002, an evidentiary hearing was held. At the close of evidence, the court announced from the bench that custody would be granted to appellee, with liberal visitation to appellant. Upon appellant's request, findings of fact and conclusions of law were issued on September 3, 2002.
 {¶ 4} Appellant timely appealed, and herein raises the following sole Assignment of Error:
 {¶ 5} "I. THE TRIAL COURT'S DECISION TO MAKE APPELLEE THE RESIDENTIAL PARENT AND LEGAL CUSTODIAN OF THE CHILD OF THE PARTIES WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND AN ABUSE OF DISCRETION."
 I. {¶ 6} In her sole Assignment of Error, appellant argues that the trial court's grant of custody of Destiny to appellee was against the manifest weight of the evidence. We disagree.
 {¶ 7} R.C. 2151.23(F)(1) directs that a juvenile court shall exercise its jurisdiction in child custody matters in accordance with R.C. section 3109.04. In determining the best interest of a child in custody matters, R.C. 3109.04(F)(1) directs that " * * * the court shall consider all relevant factors, including, but not limited to:
 {¶ 8} "(a) The wishes of the child's parents regarding the child's care;
 {¶ 9} "(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 {¶ 10} "(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 {¶ 11} "(d) The child's adjustment to the child's home, school, and community;
 {¶ 12} "(e) The mental and physical health of all persons involved in the situation;
 {¶ 13} "(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
 {¶ 14} "(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 {¶ 15} "(h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
 {¶ 16} "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 {¶ 17} "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."
 {¶ 18} An appellate court's standard of review in custody matters is abuse of discretion. Miller v. Miller (1988), 37 Ohio St.3d 71, 74. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219. When a trial court functions as a finder of fact, it is presumed the court considers only properly admitted evidence. State v. Wiles (1990),59 Ohio St.3d 71.
 {¶ 19} Appellant specifically contends the trial court abused its discretion by granting custody to appellee, where evidence was presented that appellee did not work nor was he able to live independently, relying on a grandfather who maintained two careers and a grandmother who was partially physically disabled. Appellant contends Destiny was faring well while living with her, and contrasts appellee as an individual who "has never demonstrated any significant capacity to shoulder responsibility." Appellant's Brief at 13. Nonetheless, despite appellant's varied employment history and apparently strong work ethic, she has moved residences a number of times, and even showed uncertainty as to her exact address as of the day of the hearing.[1] We note the trial court found that appellee's mental illness, if left untreated, would cause bouts of depression, mood instability, delusions, and hallucinations. Judgment Entry, September 2, 2003, at para. 6. The trial court also took note of appellee's past problems with drug and alcohol use, including appellee's admitted drinking one month prior to the hearing. Id. at para. 7. However, the court also recognized that appellee was "currently medication-compliant" and that his court-ordered drug screen result was negative. Appellee's psychiatrist testified and reported no present barriers to appellee's ability to take care of Destiny. Two registered nurses from local social services agencies also were called as witnesses, both of whom reported no concerns for Destiny in her present setting with appellee.
 {¶ 20} We herein emphasize that in proceedings involving the custody and welfare of children, the power of the trial court to exercise discretion is peculiarly important. Thompson v. Thompson (1987),31 Ohio App.3d 254, 258, citing Trickey v. Trickey (1952), 158 Ohio St. 9,13. The trier of fact is in a far better position to observe the witnesses' demeanor and weigh their credibility. See State v. DeHass
(1967), 10 Ohio St.2d 230. This case patently presents a scenario in which both parties face a number of potential hurdles in attaining successful parenting roles. However, it is at least apparent that appellee, notwithstanding the specter of future mental health complications, is presently in a position of having a stable support network to buttress his custodial role. Our review of the cold transcript in the matter sub judice does not indicate that this is a case in which appellate reversal would be warranted against the trier of fact who observed the proceedings firsthand.
 {¶ 21} Accordingly, appellant's sole Assignment of Error is overruled.
 {¶ 22} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Morgan County, Ohio, is hereby affirmed.
By: Wise, J., Gwin, P.J., and Farmer, J., concur.
[1] Appellant stated the following at the beginning of her direct examination: "Uh, I don't know my street address but I have a post office address. I live in Malta. I think it's 564 Main Street, Malta." Tr. at 90.